MICHAEL, Circuit Judge,
concurring in the judgment:
Unlike the majority, I believe that MeVey’s First Amendment rights were violated. Nevertheless, I would grant qualified immunity to the defendants because their conduct did not violate clearly established rights of which a reasonable official would have known. According, I concur in the judgment.
In order for McVey to survive summary judgment on her claim of retaliatory discharge, the following factors must be present: (1) she spoke as a citizen upon a matter of public concern; (2) her interest in her speech outweighs the Airport Commission’s interest in providing effective and efficient services to the public; and (3) there is a genuine issue of material fact as to whether her speech was a substantial *637 factor in her termination. The crux of the majority’s conclusion is that McVey’s speech does not touch on matters of public concern because she fails to proffer sufficient evidence of any official misconduct and because McVey was motivated more by her self-interest as an employee than by her interest as a citizen in a matter of public concern. This conclusion means that McVey not only fails to establish the first factor, but she also loses on the balancing test of the second factor. I respectfully disagree with the majority’s First Amendment analysis.
An employee’s speech touches upon a matter of public concern if it can “be fairly considered as relating to any matter of political, social, or other concern to the community.” Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). We have said that “[t]he focus is ... upon whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as 'essentially a private matter between employer and employee.” Berger v. Battaglia, 779 F.2d 992, 999 (4th Cir.1985) (internal quotations omitted). In other words, “would a member of the community be truly concerned with the employee’s speech?” Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 353 (4th Cir.2000). In performing the public interest inquiry, we must examine the content, form, and context of a given statement, as revealed by the whole record. Connick, 461 U.S. at 147-148.
The content of McVey’s speech may be fairly characterized as “seeking] to bring to light actual or potential wrongdoing or breach of public trust” on the part of the Airport Commission. Id. at 148. Her speech — her refusal to certify the correctness of certain minutes in the FOIA package and her separate cover letter documenting this refusal — draws attention to possible irregularities in the Airport Commission’s FOIA response. Whether or not a public agency has complied with the law is obviously of interest to the community. Indeed, “[tjhere is perhaps no subset ofmatters of public concern’ more important than bringing official misconduct to light.” Davis v. Ector County, 40 F.3d 777, 782 (5th Cir.1995) (footnote omitted). See also Chappel v. Montgomery County Fire Prot. Dist. No. 1, 131 F.3d 564, 576 (6th Cir.1997) (citation omitted) (“[Pjublic interest is near its zenith when ensuring that public organizations are being operated in accordance with the law.”).
The form and context of McVey’s speech support this conclusion. Her expression was in the form of a signed statement to a local newspaper, made in response to the paper’s request for public information. Questionable activity surrounding the FOIA request provided the context. According to McVey, Kenneth Stacy, chairman of the Commission, had improperly told her to delay responding to the FOIA request in order to buy time. Furthermore, Stacy and other Commissioners generated minutes for commission meetings after the FOIA request, and these meetings had not been open as required by law. Virginia Freedom of Information Act, Va. Code Ann. § 2.2-3707(0 (Michie 2001). As airport manager and custodian of the records, McVey is in the best position to know about possible improprieties in the airport’s public recordkeeping, and “[t]he Supreme Court has said that it is essential to protect the rights of persons having special knowledge ... to speak on an issue of public concern.” Korb v. Lehman, 919 F.2d 243, 247 (4th Cir.1990) (citing Pickering v. Bd. of Educ., 391 U.S. 563, 572, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).
The majority acknowledges the whistle-blowing implicit in McVey’s speech, but *638 tries to brush it aside as merely an attempt to protect herself in the event of any wrongdoing. That may be one possible reading. However, we are reviewing a grant of summary judgment for the Airport Commission, and we are therefore obliged to read the facts and draw inferences in the light most favorable to McVey. Had the majority followed this basic summary judgment principle, it surely would have concluded that McVey refused to endorse the accuracy of the FOIA response not because she was worried about her professional reputation, but because she wanted to alert the public to possible misconduct by her agency.
In any case, speech can address issues of public concern even if it is partly motivated by self-interest. See, e.g., Davis, 40 F.3d at 783 n. 21 (citation omitted) (“[A]n element of personal interest on the part of an employee in the speech does not prevent a finding that the speech as a whole raises issues of public concern.”); Gustafson v. Jones, 290 F.3d 895, 908 (7th Cir. 2002)(same). After all, in Connick the plaintiffs speech, a questionnaire, was motivated by a personal grievance (about an unwanted job transfer), yet that did not automatically remove the speech from the scope of public concern. Connick, 461 U.S. at 140 41,149. “[T]he argument that an individual’s personal motives for speaking may dispositively determine whether that individual’s speech addresses a matter of public concern is plainly illogical and contrary to the broader purposes of the First Amendment.... [T]he First Amendment is concerned not only with a speaker’s interest in speaking, but also with the public's interest in receiving information.” Chappel, 131 F.3d at 574.
The majority next argues that McVe/s speech does not touch on matters of public import because she “has not been able to present any evidence that the minutes were inaccurate or that their creation was in any way illegal.” Ante at 635. However, allegations of wrongdoing need not be proven to merit First Amendment protection. “A public employee is not required to prove the truth of his speech in order to secure the protections of the First Amendment.” Chappel, 131 F.3d at 576. On the contrary, we have held that the truth or falsity of an allegation is irrelevant: plaintiffs need not “offer any evidence of the truth of their criticisms and, likewise the defendants had no right to seek to prove the falsity of the criticisms. The question was simply one of law whether the statements, irrespective of their truth or falsity, raised a ‘matter of public concern.’ ” Buschi v. Kirven, 775 F.2d 1240, 1248 (4th Cir.1985) (internal quotations omitted). In fact, the Supreme Court has held that a public employee’s exercise of her right to speak out is protected “absent proof of false statements knowingly or recklessly made.” Pickering v. Bd. of Educ., 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In any event, McVey has proffered evidence of improper behavior. She has put into the record the actual minutes from the development committee meeting of March 6, 1996, and the newly minted minutes of that meeting submitted in response to the FOIA request. They are not the same. McVey has also pointed to the testimony of James D. Vicars, one of the commissioners who attended the meeting. Vicars admitted in his deposition that information was intentionally left out of the minutes:
Q: Is Exhibit 13 misleading because it
omits information?
A: By design it is, yes.
Q: Are you saying it was intentionally misleading?
A: Yes, sir.
By improperly viewing the facts in the light most favorable to the Airport Com *639 mission, the majority discounts the omissions as minor ones. The point is, however, that the Commission falsified the minutes, which means that the Commissioners who vouched for the accuracy of those minutes misled the public.
The majority’s erroneous conclusion that McVey's speech did not touch upon a matter of public concern also carried over into its balancing inquiry. “That inquiry was thus tainted from the outset by this threshold legal error.” Jackson v. Bair, 851 F.2d 714, 721 (4th Cir.1988). To start, the majority fails to give proper weight to McVey’s interest and the public’s interest in her speech. The majority then compounds this error by giving too much weight to the Airport Commission’s interests. The majority states that McVey had a “confidential policymaking” role and therefore her speech was entitled to less protection. Here, the majority once again fails to consider the facts in the light most favorable to McVey. She insists that she had no policymaking authority, and her job description supports her. Even if McVey was a policymaker, this would make little difference in the context of this case. “Although a high-level policymaker enjoys little First Amendment protection for her statements about her government employee’s policy, the balance may be different for her statements preventing or exposing government wrongdoing.” McVey v. Stacy, 157 F.3d 271, 281 (4th Cir.1998) (Mur-naghan, J., concurring). In addition, when the speech implicates government wrongdoing, a showing of potential disruption does not suffice to trump the speech: “If McVey’s speech were intended to prevent or disclose the illegal actions of her government-employer, her interest in that speech, which encompasses the public’s interest, would be compelling, and a very strong showing of disruption of legitimate government functions would be required to overcome it.” Id. The Commissioners, who bear the burden of proving disruption, see Jackson, 851 F.2d at 718, have not pointed to any actual disruption in the running of the airport, and they have not cited any instances of inconvenience to the public. While the working relationship between McVey and the Commission may have deteriorated, this inevitable byproduct of whistleblowing should not count against McVey. See, e.g., McVey, 157 F.3d at 282 (Murnaghan, J., concurring); Key-ser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 748 (9th Cir.2001).
In short, McVey has presented a valid First Amendment retaliation claim.* Nonetheless, the Airport Commissioners are entitled to qualified immunity unless they transgressed a bright line. “[I]n First Amendment cases, where a sophisticated balancing of interests is required to determine whether the plaintiffs constitutional rights have been violated, ‘only infrequently will it be “clearly established” that a public employee’s speech on a matter of public concern is constitutionally protected.’ ” McVey, 157 F.3d at 277 (quoting DiMeglio v. Haines, 45 F.3d 790, 806 (4th Cir.1995)). I concur in the judgment only because I do not believe that this is one of those infrequent cases.

 The third (causation) factor for McVey’s First Amendment retaliation claim is also satisfied because she has raised factual issues about every single reason listed in her Notice of Contemplated Termination.